UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Access Now, Inc., R. David
New, John Mule, Stephen
Yerardi, and Stephen Theberge

     v.                            Civil No. 17-cv-116-JL
                                        Opinion No. 2017 DNH 236

Blue Apron, LLC


**MEMORANDUM ORDER**


     This motion turns on, among other issues, whether defendant Blue Apron's website, www.blueapron.com, constitutes a "public accommodation" under Title III of the Americans with Disabilities Act (ADA).  Title III proscribes disability-based discrimination that prevents "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of any place of public accommodation . . . ." 42 U.S.C. § 12182(a).  Plaintiffs Access Now, Inc., R. David New, John Mule, Stephen Yerardi, and Stephen Theberge (collectively "Access Now") allege that Defendant Blue Apron violates Title III by not making its website sufficiently accessible to blind and visually-impaired consumers.  Blue Apron has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing, inter alia, that websites are not "places of public accommodation" absent connection with a brick-and-mortar store,

and that it therefore cannot be held liable under the ADA for its website's inaccessibility.

The court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question).  After hearing oral argument, the court denies Blue Apron's motion.  Under First Circuit precedent, Access now has sufficiently pleaded that Blue Apron's website is a "public accommodation."  Blue Apron's additional arguments asserting due process violations, invoking the primary jurisdiction doctrine, challenging the plaintiffs' standing and requested injunction, and asserting that its website provides effective communication for visually-impaired customers do not mandate dismissal under Rule 12(b)(6) or otherwise.

## I.  **Applicable legal standard**

In analyzing a complaint in the Rule 12(b)(6) context, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The complaint, read in that light, must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009)).  With the facts construed in this manner, "questions of law [are] ripe for resolution at the pleadings stage." Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009).

## II.  **Background**

Plaintiffs Mule, New, Yerardi, and Théberege allege that they are blind and that they use screen-reader software that converts buttons, links, and text fields into audio to facilitate their engagement with websites.  Blue Apron's website allows consumers to view and purchase various meal plans for home delivery.  Access Now alleges that Blue Apron's website is not compatible with screen-reader software and, as a result Plaintiffs cannot fully use and enjoy Blue Apron's services.  Mule, New, Yerardi, and Théberege each "attempted to access" Blue Apron's website using their screen readers but found the site to be "largely unusable due to various accessibility barriers."[1]  Access Now claims that "Blue Apron does not have, and has never had, a corporate policy that is reasonably calculated to cause its Website to become and remain accessible."[2]

---

[1] Amended Compl. (doc. no. 19) ¶¶ 30, 32, 34, 36.  For example, plaintiffs allege that blueapron.com contains various input fields, links, and buttons that are not labeled or improperly labeled -- preventing the effective use of screen-reader software.  Id.

[2] Id. ¶ 7.

Access Now's complaint[3] alleges a violation of Title III of the ADA and requests a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504.  Access Now requests that the court compel Blue Apron's compliance with Title III by providing visually-impaired and blind consumers meaningful access to its website through, for example, implementing the Web Content Accessibility Guidelines version 2.0 AA (WCAG 2.0 AA) standards developed by the Worldwide Web Consortium (W3C).[4]  Access Now also seeks a declaratory judgment that Blue Apron violated Title III, as well as payment of costs and reasonable attorneys' fees.

III. **Analysis**

Moving to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6), Blue Apron argues that:  (1) its website is not a "public accommodation" under Title III of the ADA because it lacks connection to a brick-and-mortar store;

---

[3] Plaintiffs' Amended Complaint (doc. no. 19) is operable.

[4] W3C is an industry working group that describes its mission as "lead[ing] the World Wide Web to its full potential by developing protocols and guidelines that ensure the long-term growth of the Web."  About W3C, http://www.w3.org/Consortium/ mission (last visited Nov. 3, 2017).  "To this end, members of W3C (including various industry groups, manufacturers, and others, each with their own conceivable interests in the agenda) are involved in developing standards to describe the various building blocks of the Internet."  ACTV, Inc. v. Walt Disney Co., 346 F.3d 1082, 1089 (Fed. Cir. 2003).

(2) considerations of due process and/or the primary jurisdiction doctrine mandate dismissing or staying this action pending regulatory guidance from the Department of Justice (DOJ) on website accessibility for the blind and visually-impaired; (3) its website provides "effective communication" to its blind and visually-impaired customers, as required by the ADA, by referring them to a telephone number for assistance; (4) the plaintiffs seek an overly-broad, "comply with the law" injunction; and (5) the plaintiffs lack standing to obtain the breadth of the injunction they seek.  The court denies Blue Apron's motion, concluding that:  (1) a website alone may amount to a "public accommodation" under precedent in this Circuit; (2) neither due process concerns nor the primary jurisdiction doctrine warrant dismissing or staying this action; and (3) whether Blue Apron's website provides "effective communication" and the scope of any potential remedy are matters best resolved on a more developed record or at trial.

### A.  Public accommodation

Title III of the ADA prohibits discrimination in places of public accommodation operated by private entities.  It provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).  The ADA considers certain private

entities as "public accommodations" for its purposes "if

the operations of such entities affect commerce . . . ."[5]

Id. § 12181(7).

Plaintiffs allege that Blue Apron violates Title III

because it "largely denies approximately 7 million Americans who

are blind or visually impaired access to its Website because

much of its online content and services is incompatible with

screen reader programs."[6]  Blue Apron, moving to dismiss the

complaint, argues that a website does not constitute a "public

accommodation" absent a nexus with a physical "brick-and-mortar"

---

[5] Those relevant to this discussion include:

> (C) a motion picture house, theater, concert hall,
> stadium, or other place of exhibition or
> entertainment; . . . .

> (E) a bakery, grocery store, clothing store, hardware
> store, shopping center, or other sales or rental
> establishment;

> (F) a laundromat, dry-cleaner, bank, barber shop,
> beauty shop, travel service, shoe repair service,
> funeral parlor, gas station, office of an accountant
> or lawyer, pharmacy, insurance office, professional
> office of a health care provider, hospital, or other
> service establishment . . . .

Id.

[6] Amended Compl. (doc. no. 19) ¶ 3.

location.[7]  Though Courts of Appeals differ on what constitutes a
"public accommodation" in the website context, the First Circuit
Court of Appeals appears to consider websites, standing alone,
as public accommodations under circumstances such as these.
That authority binds this court.

In Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n
of New England, Inc., the First Circuit Court of Appeals held
that "public accommodations" are not limited to actual, physical
places.  37 F.3d 12, 19 (1st Cir. 1994).  Applying Title III to
an insurance provider, the court concluded that Title III's
plain meaning does "not require 'public accommodations' to have
physical structures for persons to enter."  Id.  Title III lists
twelve broad categories as examples of "public accommodation."
DOJ regulations enacted to carry out ADA's mandate define "place
of public accommodation" as "a facility operated by a private
entity whose operations affect commerce and fall within at least
one of" the twelve broad categories enumerated in Title III.
28 C.F.R. § 36.104; 42 U.S.C. § 12181(7).  Neither the statutory
nor regulatory definitions expressly states whether websites are
"public accommodations."

The First Circuit Court of Appeals reasoned that by
including "travel services" in the statutory definition of

---

[7] Defendant's Mem. (doc. no. 21-1) at 4-8.

"public accommodation," Title III covers "providers of services which do not require a person to physically enter an actual physical structure" because "[m]any travel services conduct business by telephone or correspondence without requiring their customers to enter an office in order to obtain their services." Carparts, 37 F.3d at 19. The court emphasized that "[i]t would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not." Id.

This line of reasoning supports a conclusion that the plaintiffs have sufficiently pleaded that Blue Apron's website amounts to a public accommodation. As Judge Ponsor has explained, "Carparts's reasoning applies with equal force to services purchased over the Internet," as long as the website in question "falls within a general category listed under the ADA." Nat'l Ass'n of the Deaf v. Netflix, Inc., 869 F. Supp. 2d 196, 200-01 (D. Mass. 2012). "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would 'run afoul of the purposes of the ADA'" in that it would prevent "'individuals with disabilities [from] fully enjoy[ing] the goods, services, privileges and advantages, available indiscriminately to other members of the general public.'" Id. at 200 (quoting Carparts,

37 F.3d at 19). See also 42 U.S.C. § 12101(b)(1) (the purposes
of the ADA as including, among others, "provid[ing] a clear and
comprehensive national mandate for the elimination of
discrimination against individuals with disabilities").

The Seventh Circuit Court of Appeals has similarly rejected
the argument that "public accommodation" requires a physical
place. Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. &
Am. Fed'n of Grain Millers, AFL-CIO-CLC, 268 F.3d 456, 459 (7th
Cir. 2001); see also Doe v. Mut. of Omaha Ins. Co., 179 F.3d
557, 559 (7th Cir. 1999) (Title III covers public accommodations
"whether in physical space or in electronic space"). In Morgan,
the Court explained that "[a]n insurance company can no more
refuse to sell a policy to a disabled person over the Internet
than a furniture store can refuse to sell furniture to a
disabled person who enters the store." 268 F.3d at 459. It
emphasized that an accommodation's location is irrelevant for
Title III purposes; "[w]hat matters is that the good or service
be offered to the public." Id.

Blue Apron observes, correctly, that the majority of Courts
of Appeals that have addressed this issue require a "public
accommodation" to be an actual, physical space or have a nexus
to an actual, physical space, such that stand-alone websites may

not be considered "public accommodations."[8]  The Third, Fifth,

Sixth, and Ninth Circuit Courts of Appeals have rejected, either

expressly or by implication, the holding in Carparts.  See Magee

v. Coca-Cola Refreshments USA, Inc., 833 F.3d 530, 534 (5th Cir.

2016), cert. denied, 833 F.3d 530 (2017) (concluding that

vending machines are not places of public accommodation because

the ADA definition of public accommodation only includes actual

physical spaces open to the public); Earll v. eBay, Inc., 599 F.

App'x 695, 696 (9th Cir. 2015) ("We have previously interpreted

the term 'place of public accommodation' to require 'some

connection between the good or service complained of and an

actual physical place.'" (quoting Weyer v. Twentieth Century Fox

Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000))); Ford v.

Schering-Plough Corp., 145 F.3d 601, 612-14 (3d Cir. 1998)

(rejecting the reasoning in Carparts and holding that "public

accommodation" does not refer to non-physical access); Parker v.

Metro. Life Ins. Co., 121 F.3d 1006, 1013-14 (6th Cir. 1997)

("The clear connotation of the words in § 12181(7) is that a

public accommodation is a physical place.").

     These Courts of Appeals apply the doctrine of noscitur a

sociis in rejecting the First Circuit's rationale that the

inclusion of "travel service" in the statute's definition

---

[8] Defendant's Mem. (doc. no. 21-1) at 6-7.

necessarily extends ADA coverage beyond actual physical places.
The court may "rely on the principle of noscitur a sociis -- a
word is known by the company it keeps -- to 'avoid ascribing to
one word a meaning so broad that it is inconsistent with its
accompanying words, thus giving unintended breadth to the Acts
of Congress.'" Yates v. United States, 135 S. Ct. 1074, 1085,
(2015) (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 575
(1995)).  Invoking this canon, these courts conclude, in
essence, that "travel services" must be construed narrowly to
refer to physical locations because all of the other statutory
examples of "public accommodations" represent physical places.

Blue Apron's statutory interpretation argument does not
lack merit.  Yet, the holdings cited by Blue Apron, however
convincing in their own right, do not bind this court.  Carparts
binds this court.  It is therefore not free to depart from clear
First Circuit precedent, and therefore cannot adopt the
construction of the ADA propounded by the Third, Fifth, Sixth,
and Ninth Circuits as urged by Blue Apron.

Applying the reasoning of Carparts to this case, the court
cannot conclude, at the Rule 12(b)(6) stage, that the
plaintiff's complaint falls short of pleading that Blue Apron's
website is a "public accommodation" under Title III of the ADA.
Though true that websites are not specifically mentioned in the
twelve enumerated categories of "public accommodations," the

plaintiffs "must show only that the web site falls within a general category listed under the ADA." Netflix, 869 F. Supp. 2d at 201.  Here, as Access Now argues, Blue Apron may amount to an online "grocery store," which is listed under Title III's definition of "public accommodation," 42 U.S.C. § 12181(7)(E), or at the very least may fall within the general "other sales" or "other service establishment" categories, id. § 12181(7)(E)-(F).  This suffices at the 12(b)(6) stage to prevent dismissal.[9]

## B. Due process and primary jurisdiction

Blue Apron next moves to dismiss this action under two theories connected to the lack of DOJ regulations governing website accessibility.  Congress empowered the Attorney General to "promulgate regulations . . . that implement" the provisions of Title III.  42 U.S.C. § 12134(a); id. at § 12186(b).  Pursuant to that authority, the DOJ has promulgated, for

---

[9] The DOJ has, in the past, "repeatedly affirmed that Title III applies to websites that meet the definition of a public accommodation." Gorecki v. Hobby Lobby Stores, Inc., No. CV 17-1131-JFW, 2017 WL 2957736, at *4 (C.D. Cal. June 15, 2017). Blue Apron argues, however, that a recent DOJ brief regarding the treatment of vending machines under Title III essentially supersedes any case law in favor of extending ADA coverage to websites.  Defendant's Reply (doc. no 37) at 2.  The court would be hard-pressed to conclude that the DOJ has altered its position on website accessibility in light of a brief submitted in connection with vending machines, a vastly different technology.  In any event, the DOJ's position weighs more on the due process issues discussed infra Part III.B than the applicability of Title III to websites.

example, a set of ADA Accessibility Guidelines (ADAAG), see
28 C.F.R. § 36.406(a); 28 C.F.R. pt. 36, app. A, that "lay out
the technical structural requirements of places of public
accommodation," Chapman v. Pier 1 Imports (U.S.), Inc., 631 F.3d
939, 945 (9th Cir. 2011) ("Whether a facility is 'readily
accessible' is defined, in part, by the [ADAAG]," which was
"[p]romulgated by the Attorney General to 'carry out the
provisions' of the ADA . . . .").

Recognizing that structural barriers may prevent
individuals with disabilities from accessing and fully engaging
with websites, the DOJ has construed websites as "places of
public accommodation" under Title III of the ADA for over 20
years.  The DOJ "first made this position public in a 1996
letter from Assistant Attorney General Deval Patrick responding
to an inquiry by Senator Tom Harkin regarding the accessibility
of Web sites to individuals with visual disabilities."
Nondiscrimination on the Basis of Disability; Accessibility of
Web Information and Services of State and Local Government
Entities and Public Accommodations, 75 Fed. Reg. 43460, 43464
(July 26, 2010) (reciting history of the DOJ's application of
Title III to websites).  After maintaining this position through
a variety of briefs and congressional hearings for over a
decade, the DOJ in 2010 issued an Advanced Notice of Proposed
Rulemaking ("ANPRM"), seeking public comment on whether it

should adopt, among others, the WCAG 2.0 AA guidelines established by W3C as a standard for website accessibility. Id. at 43464-65. It never promulgated final regulations, however.

Blue Apron argues that holding it accountable for failing to comply with Title III of the ADA in the absence of such regulations would violate its right to due process. It further contends that the court should decline to adjudicate this matter under the primary jurisdiction doctrine until the Department of Justice takes action. Neither argument compels the court to stay or dismiss this case.

### 1. Due process

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." Fed. Commc'ns Comm. v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012). Blue Apron argues that to hold it liable for violating Title III in the absence of regulations imposing more specific website-accessibility standards would violate its right to due process.[10] Absent such regulations, it contends, it lacked sufficient notice of what Title III requires of its website. Though such regulations may provide Blue Apron and other website operators with a greater level of certainty about compliance with

---

[10] Defendant's Mem. (doc. no. 21-1) at 8-16.

Title III, Blue Apron must still comply with Title III's more
general prohibition on disability-based discrimination in their
absence.

The ADA -- which, notably, Blue Apron does not challenge as
impermissibly vague -- itself provides sufficient notice to
alleviate due process concerns.  As set forth supra, Title III
of the ADA prohibits discrimination "on the basis of disability
in the full and equal enjoyment of the goods, services,
facilities, privileges, advantages, or accommodations of any
place of public accommodation by any person who owns, leases (or
leases to), or operates a place of public accommodation."
42 U.S.C. § 12182(a).  It requires public accommodations, among
other things, "to make reasonable modifications in policies,
practices, or procedures, when such modifications are necessary
to afford such goods, services, facilities, privileges,
advantages, or accommodations to individuals with disabilities,"
and to "take such steps as may be necessary to ensure that no
individual with a disability is excluded, denied services,
segregated or otherwise treated differently than other
individuals because of the absence of auxiliary aids and
services . . . ."  Id. § 12182(b)(2)(A)(ii)-(iii).  It further
explains that public accommodations do not discriminate if those
modifications are unreasonable or "would fundamentally alter the
nature" of the good, service, or accommodation, or if providing

auxiliary aids or services "would fundamentally alter the nature of the good, service, or accommodation or would result in an undue burden." Id.

Whether a modification is "reasonable," too burdensome, or a fundamental alteration to the nature of the service or accommodation "will vary depending on a plaintiff's disability and a defendant's goods, services, accommodations, and resources -- a modification that works for a certain plaintiff may not work for all plaintiffs and may not be a reasonable request to make of every defendant." Andrews v. Blick Art Materials, LLC, No. 17-CV-767, 2017 WL 3278898, at *18 (E.D.N.Y. Aug. 1, 2017). Whether the particular accommodations requested by the plaintiffs to permit their equal enjoyment of Blue Apron's website fall into these categories is a fact-dependent question better addressed with a developed factual record not present at this stage of the proceedings. Id.

It suffices here that the statute -- which, again Blue Apron has not challenged on vagueness grounds -- provides the defendant with notice of its requirements.[11]  As several courts

_____

[11] As another court explained in rejecting a similar argument:

> The defendant's principal complaint appears to be that it wants there to be black-and-white rules for ADA compliance, and here, there may be shades of gray. But the anti-discrimination provisions the defendant is accused of violating are not simple checklists of clear-cut rules—they are standards that are meant to

that have addressed this question have concluded, "[t]he lack of
specific regulations does not eliminate [the defendant's]
obligation to comply with the ADA or excuse its failure to
comply with the mandates of the ADA." Hobby Lobby, 2017 WL
2957736, at *4; see also Gorecki v. Dave & Buster's, Inc., No.
17-cv-1138-PSG, slip. op. at 9 (C.D. Cal. Oct. 10, 2017)
(concluding that the defendant "was under notice that it was
obligated to" comply with Title III despite absence of
guidelines); Reed v. CVS Pharmacy, Inc., No. 17-cv-3877-MWF,
slip. op. at 9 (C.D. Cal. Oct. 3, 2017).[12]

In arguing the contrary, Blue Apron relies on two sets of
cases, neither of which the court finds persuasive in this
circumstance.  First, Blue Apron focuses on cases governed by
regulations that the DOJ did promulgate.  Specifically, courts

---

be applied contextually and flexibly.  The "gray" the
defendant complains of is a feature of the Act.

Andrews, 2017 WL 3278898, at *17.

[12] The plaintiffs filed copies of the Dave & Buster's and Reed
opinions as supplemental authority in support of that opposition
to the motion to dismiss.  See document nos. 42-1, 42-2.  The
court has reviewed and considered both their submission (doc.
no. 42) and Blue Apron's response (doc. no. 43).

After oral argument, Blue Apron also supplied "supplemental
authority" (doc. no. 44) in the form of two amicus briefs filed
in an appeal pending before the Eleventh Circuit Court of
Appeals.  The court does not view such briefs as "authority"
that merits supplementation, nor will it consider memoranda
submitted as ex post facto supplementation of Blue Apron's own
arguments through those made by others before another court.

have held that a plaintiff may not maintain a Title III action "based on the design of a public accommodation . . . in the absence of an ADAAG violation." White v. Divine Investments, Inc., 286 Fed. App'x. 344, 346 (9th Cir. 2007). Those cases, however, address a context different from this one: whether a plaintiff may maintain a Title III action claiming a violation of the ADA due to the absence of a design element that is not required by the ADAAG, but in a setting -- such as a physical building -- governed by the ADAAG.[13] See id. Where the DOJ has promulgated controlling regulations, courts have declined to read the mandate of Title III to render public accommodations accessible more broadly than the contours of those regulations. Here, the question is not whether a plaintiff may fall back on Title III's general prohibition on discrimination when the regulations promulgated by the DOJ apply but do not impose a specific requirement; it is whether Title III operates in the absence of any regulations addressing website accessibility. Absent such fully-promulgated regulations, the statute's more general mandate remains enforceable.

Blue Apron also urges the court to follow the Ninth Circuit Court of Appeals's decision in United States v. AMC, 549 F.3d

---

[13] The cases cited by Blue Apron on pages 13 and 14 of its memorandum (doc. no. 21-1) fall into this category.

760 (9th Cir. 2008). There, the court concluded that requiring a defendant to retrofit its theaters as a result of ambiguous -- but extant -- guidance from the DOJ violated its right to due process. Id. at 768-70. Like those cases discussed above, however, AMC was also decided in the context of existing DOJ regulations. Id. The due process concern arose where the regulations mandated "comparable viewing angles" for disabled seating, theater-operator AMC interpreted them to require comparable lines of sight of the screen for disabled and non-disabled seating, but not comparable angles of view. AMC received approval for its theaters "from multiple states, whose own programs had been certified by DOJ as 'meeting or exceeding' the federal requirements promulgated by the Access Board." Id. at 769 n.3. The DOJ later clarified that it intended an interpretation that encompassed both lines of sight and angles of view. Id. at 764. The Court of Appeals concluded that AMC was not "on notice that the regulators understood [the regulation] to incorporate a comparable viewing angle requirement" at any point prior to the DOJ staking that position in an earlier amicus brief, and that the district court's order requiring AMC to retrofit its theaters built prior to that notice violated due process.[14] Id. at 770. Here, there is no

_____

[14] At oral argument, Blue Apron emphasized a similar decision by the First Circuit Court of Appeals, which likewise concluded

ambiguity of regulation; there is, as Blue Apron has taken pains

to point out, no regulation at all.  Nor has Blue Apron alleged

that it has received assurances of its compliance with the ADA,

such that to find otherwise now would violate its right to due

process.

Finally, while an attempt to hold Blue Apron liable for

failure to comply with independent accessibility standards not

promulgated by the DOJ, such as the WCAG 2.0 AA standards, may

violate due process requirements, that concern is not implicated

here.  As the Federation of the Blind observes, the plaintiffs

allege that Blue Apron

> has violated the ADA by denying them 'full and equal
> access to the website,' and seek[] injunctive relief
> requiring [Blue Apron] to 'take all steps necessary to
> bring its Website into full compliance with the
> requirements set forth in the ADA . . . so that its
> Website is fully accessible to, and independently
> useable by, blind individuals.'[15]

That is, the plaintiffs do not allege that Blue Apron violates

the ADA specifically by failing to comply with the WCAG 2.0 AA

---

that the DOJ's regulations mandating "comparable viewing angles"
were ambiguous and retroactive application of an interpretation
incorporating comparative viewing angles may implicate due
process concerns.  United States v. Hoyts Cinemas Corp., 380
F.3d 558, 573-74 (1st Cir. 2004).  The distinction between this
case and AMC -- the absence of promulgated regulations
addressing website accessibility requirements, as opposed to a
shifting interpretation of such regulations -- likewise
distinguishes this case from Hoyts.

[15] Amicus Brief (doc. no. 39) at 14 (quoting Amended Compl. ¶ 53,
Amended Compl. Prayer ¶ 2).

standards.  They rely on Title III of the ADA as governing the defendant's potential liability and invoke compliance with the WCAG 2.0 AA standards as a sufficient condition, but not a necessary condition, for such compliance, and therefore as a potential remedy.  As several other courts have observed, "at this stage of the case it is premature to consider the remedies that may be imposed.  If [the plaintffs] prevail[], [the defendant] will have ample opportunity to present evidence of an appropriate remedy."  Hobby Lobby, 2017 WL 2957736, at *6.  See also Dave & Buster's, slip. op. at 4 (deferring consideration of whether WCAG 2.0 AA standards are an appropriate remedy); Reed, slip. op. at 7 (same).

### 2. Primary jurisdiction

In a similar vein, Blue Apron urges the court to abstain from addressing this action under the primary jurisdiction doctrine until the DOJ issues detailed regulations outlining how a website operator may comply with Title III.  "[T]he primary jurisdiction doctrine permits and occasionally requires a court to stay its hand while allowing an agency to address issues within its ken."[16]  U.S. Pub. Interest Research Grp. v. Atl. Salmon of Maine, LLC, 339 F.3d 23, 34 (1st Cir. 2003).

---

[16] Consistent with the primary jurisdiction doctrine's position as a prudential doctrine, Blue Apron suggests only that this court "should" and "may" dismiss or stay this action on that

"[N]o fixed formula exists for applying the doctrine.  In every case, the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." Am. Auto. Mfrs. Ass'n v. Massachusetts Dep't of Envtl. Prot., 163 F.3d 74, 81 (1st Cir. 1998) ("AAMA") (quoting United States v. Western Pac. R.R. Co., 352 U.S. 59, 64 (1956)). One reason is "to avoid the possibility that a court's ruling might disturb or disrupt the regulatory regime of the agency in question." Id.  Another, "that the goal of national uniformity in the interpretation and application of a federal regulatory regime is furthered by permitting the agency that has primary jurisdiction over the matter in question to have a first look at the problem." Id.  Courts in this Circuit may also consider three guiding factors in deciding whether to invoke this doctrine:

> (1) whether the agency determination l[ies] at the heart of the task assigned the agency by Congress; (2) whether agency expertise [i]s required to unravel intricate, technical facts; and (3) whether, though perhaps not determinative, the agency determination would materially aid the court.

Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co., 215 F.3d 195, 205 (1st Cir. 2000) (quoting Massachusetts v. Blackstone Valley

---

basis, not that it "must."  Defendant's Mem. (doc. no. 21-1) at 16-18.

Elec. Co., 67 F.3d 981, 992 (1st Cir. 1995) (alterations
original)).  The court must, however, balance these factors
"against the potential for delay inherent in the decision to
refer an issue to an administrative agency."  AAMA, 163 F.3d at
81.  Taking all of these considerations into account, the court
declines to invoke the primary jurisdiction doctrine here.

Congress charged the DOJ with issuing regulations under
Title III of the ADA, 42 U.S.C. § 12186(b), rendering technical
assistance, id. § 12206(c), and enforcing Title III in court,
id. § 12188(b).  Specifically, as Blue Apron observes, it tasked
the DOJ with "providing guidance and technical expertise to
develop standards that public accommodations must comply with
under the ADA."[17]  It has not, however, charged the DOJ with
determining whether a defendant's actions, or lack thereof,
violate the ADA.  This remains solely within the jurisdiction of
the court.  This is, therefore, not an occasion such as those in
which the First Circuit Court of Appeals has affirmed invocation
of the primary jurisdiction doctrine where plaintiffs brought
claims in federal court more properly adjudicated, on first
instance, by administrative bodies tasked with such
determinations.  See, e.g., Rymes Heating Oils, Inc. v.
Springfield Terminal R. Co., 358 F.3d 82, 90 (1st Cir. 2004)

---

[17] Defendant's Mem. (doc. no. 21-1) at 17.

(primary jurisdiction properly invoked with respect to rail-service-related claims brought in federal court but never presented to the Surface Transportation Board, which had authority to decide them); AMAA, 163 F.3d at 82-84 (deferring decision on whether certain memoranda of agreement amounted to emissions "standards" to the EPA); Tamburello v. Comm-Tract Corp., 67 F.3d 973, 977 (1st Cir. 1995) (deferring RICO claims based solely on labor practices to the NLRB on first instance). Thus, this is not an instance where "the agency determination l[ies] at the heart of the task assigned the agency by Congress." Pejepscot Indus. Park, 215 F.3d at 205.

Nor is the DOJ's technical expertise "required to unravel intricate, technical facts" in this case. Id. The DOJ does not have special technical expertise in the areas of website coding or assistive technology. Indeed, in its ANPRM, the DOJ specifically sought "input from experts in the field of computer science, programming, networking, assistive technology, and other related fields" given the "complexity" of the issue. ANPRM, 75 Fed. Reg. at 43,464. Nor does it have particular expertise that federal courts may be lacking in making accessibility determinations. The primary jurisdiction doctrine is more properly invoked in cases involving agencies with highly technical expertise or expertise concerning highly-specialized regulations. See, e.g., Verizon New England, Inc. v. Maine

Public Utilities Comm'n, 509 F.3d 1 (1st Cir. 2007)

(particularly complicated and technical issues "ought to be
resolved by the expert agency"); AMAA, 163 F.3d at 82-84
(deferring emissions-related decision to the EPA); Tamburello,
67 F.3d at 977 (deferring labor-related RICO claims to the
NLRB); Locust Cartgage Co. v. Transamerican Freight Lines, Inc.,
430 F.2d 334, 339 (1st Cir. 1970) (primary jurisdiction is
proper where "courts are confronted with issues of fact arising
under a complex regulatory scheme outside their normal
experience").  Here, "the issue at present is strictly one of
liability, and a 'determination of liability does not
necessarily require the Court to master complicated web
standards, but rather asks the Court to make exactly the same
sort of accessibility determinations that it regularly makes
when evaluating the accessibility of physical locations.'" Dave
& Buster's, slip. op. at 7 (quoting Reed, slip. op. at 10).

It is true, as Blue Apron points out, that "agency guidance
would materially aid the Court by establishing uniform and
objective standards for determining web accessibility."[18]  Agency
guidance in that vein would likewise aid those, like the
defendant, who develop and operate a website that may amount to
a public accommodation under Title III of the ADA.  Uniform

_____

[18] Defendant's Mem. (doc. no. 21-1) at 17.

regulation in this area would, of course, be preferable to the case-by-case approach required by its absence.  But the court must balance this interest against the interests of those, like the plaintiffs, claiming an inability to access a website that, under First Circuit authority, the ADA may require be made accessible.

"[T]he potential for delay inherent in the decision to refer" this issue to the DOJ, AMMA, 163 F.3d at 81, also weighs against such a referral in this case.  The DOJ issued its ANPRM over seven years ago, but has not yet promulgated any regulations.  It has, to the contrary, affirmatively abandoned consideration of website-accessibility standards for the immediate future.[19]  Because the DOJ "has not taken any further action towards promulgating specific accessibility requirements and there is no reason to believe the department will issue rules any time in the near future," the "potential for delay while the federal administrative rulemaking process proceeds is great" and weighs against invoking the primary jurisdiction doctrine in this case.[20]  Hobby Lobby, 2017 WL 2957736, at *7.

---

[19] See Current Unified Agenda of Regulatory and Deregulatory Actions, 2017 Inactive Actions list, https://www.reginfo.gov/public/jsp/eAgenda/InactiveRINs_2017_Agenda_Update.pdf (RIN 1190-AA61).

[20] One court has taken the opposite approach.  See Robles v. Dominos Pizza LLC, No. CV-16-06599-SJO, 2017 WL 1330216, at *8 (Mar. 20, 2017) (dismissing action pursuant to primary

See also Andrews, 2017 WL 3278898, at *17 ("The court will not delay in adjudicating [plaintiff's] claim on the off-chance the DOJ promptly issues regulations it has contemplated issuing for seven years but has yet to make significant progress on.").

### C. Effective communication

"To prove a violation of Title III of the ADA, a plaintiff must show that she is disabled within the meaning of the ADA, that the defendant is a private entity that owns or operates a place of public accommodation, and that the plaintiff was denied accommodation because of her disability." Collins v. Dartmouth-Hitchcock Med. Ctr., 2015 DNH 15, 8-9 (DiClerico, J.). In rendering such accommodation, regulations promulgated under the ADA require public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R.

---

jurisdiction doctrine). That court interpreted the plaintiffs' complaints to premise liability on the defendants' failure to comply with the WCAG 2.0 standards and thus found merit in the defendant's due process and primary jurisdiction arguments. 2017 WL 1330216, at *5-7. The plaintiffs' complaint in this action does not lend itself to such a reading.

At oral argument, Blue Apron also encouraged the court to stay this case pending the United States Attorney General's response to certification of a vagueness challenge in Robles v. Yum! Brands d/b/a Pizza Hut, No. CV-16-08211-ODW (Aug. 22, 2017). As the plaintiffs pointed out, however, the deadline for that response passed without any such filing on October 23, 2017, and the DOJ has not intervened in that action of the date of this order.

§ 36.303.  Blue Apron argues that the court should dismiss the complaint because it accommodates its visually-impaired customers by "provid[ing] 'effective communication' . . . through a phone number."[21]  It further contends that the plaintiffs "could have, but failed to plead, [a] claim on the basis that Defendant did not provide 'effective communications' with blind individuals pursuant to the ADA's effective communications provision."[22]

As an initial matter, it is not clear to the court that plaintiffs bringing a claim under Title III of the ADA must

---

[21] Defendant's Mem. (doc. no. 21-1) at 22.  Blue Apron suggests that the DOJ's ANPRM "endorsed" the approach of providing effective communication to its visually-impaired customers through a telephone line.  Defendant's Mem. (doc. no. 21-1) at 23.  This reliance undercuts Blue Apron's due process concerns, discussed supra Part III.B.1.  Either the DOJ's ANPRM provided it guidance on how to communicate with its customers -- including how to render its website accessible -- or it failed to do so.  The court is hard-pressed to conclude that this case warrants dismissal because Blue Apron followed one process endorsed by the DOJ in the ANPRM but lacked notice that meeting certain standards may render its website compliant with Title III of the ADA.

[22] Defendant's Reply (doc. no. 37) at 8.  As the plaintiffs correctly observe, Blue Apron raised this argument for the first time in its reply memorandum in violation of Local Rule 7.1(e)(1), which restricts such memoranda "to rebuttal of factual and legal arguments raised in the objection."  Though the court need not "consider theories advanced for the first time in reply," Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 303 n.16 (D.N.H. 2008), it addresses Blue Apron's argument here and reminds counsel, in the future, to raise all theories of relief in the opening memorandum.

plead a separate claim alleging that the defendant failed to provide effective communications.  Blue Apron relies on Collins, 2015 DNH 15, a case in which the plaintiffs "listed actions . . . that they alleged violated Title III of the ADA, including," among others, "the failure to communicate effectively . . . ." Id. at 9.  The plaintiffs here have raised similar allegations in their complaint, including that Blue Apron has, among other things, "den[ied] individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others" through its "fail[ure] to provide its Website's content and services in a manner that is compatible with auxiliary aids . . . ."[23]  The individual plaintiffs further allege that they, themselves, were denied access to Blue Apron's services as a result.[24]

That allegation made, the question of whether Blue Apron provides effective communication for visually-impaired individuals through an alternative means -- such as by telephone -- amounts to an affirmative defense against the plaintiffs' claim that Blue Apron's website violates the ADA.  See Nat'l Fed'n of the Blind v. Target Corp., 452 F. Supp. 2d 946, 956 (N.D. Cal. 2006) ("[D]efendant concludes that Target need not

---

[23] Amended Compl. (doc. no. 19) ¶¶ 58, 58(d).

[24] Id. ¶¶ 30, 32, 34, 36.

modify its website, so long as it provides the information contained therein in some other format, such as by telephone. However, the flexibility to provide reasonable accommodation is an affirmative defense and not an appropriate basis upon which to dismiss the action."). "[F]or dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings." Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001) (internal quotations omitted). Such facts are not so established here. Whether Blue Apron does, in fact, reasonably accommodate visually-impaired and blind users of its website through a telephone number that provides "effective communication" is a fact-specific inquiry not ripe for resolution at the motion to dismiss stage. The court declines to dismiss the action on these grounds.

    **D. Availability of the requested injunction**

    "Title III of the ADA authorizes the award of injunctive relief to 'any person who is being subjected to discrimination on the basis of disability.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 11 (1st Cir. 2004) (quoting 42 U.S.C. § 12188(a)(1)). An order granting such relief would, necessarily, be subject to Federal Rule of Civil Procedure 65(d)(1), in that it must "(A) state the reasons why

it issued; (B) state its terms specifically; and (C) describe in
reasonable detail -- and not by referring to the complaint or
other document -- the act or acts restrained or required."
"Since an injunctive order prohibits conduct under threat of
judicial punishment, basic fairness requires that those enjoined
receive explicit notice of precisely what conduct is outlawed."
Schmidt v. Lessard, 414 U.S. 473, 476 (1974).  Thus, as the
defendant points out, an injunction mandating that the defendant
merely "comply with the law" does not satisfy the mandate of
Rule 65(d)(1).  Blue Apron seeks dismissal of the complaint on
the grounds that plaintiffs' requested relief amounts to just
such an empty injunction.[25]

    The relief the plaintiffs seek is not so broad as the
defendants suggest, however.  They ask the court, in essence, to
order Blue Apron to retain a consultant to bring its website
into compliance with the WCAG 2.0 AA accessibility guidelines
and to implement a corporate policy incorporating training,
periodic audits, accessibility testing, and a method for its
users to report accessibility-based problems.[26]  As the

---

[25] Defendant's Mem. (doc. no. 21-1) at 23-24.

[26] Amended Compl. (doc. no. 19) ¶ 7.  Indeed, in light of this
specificity, Blue Apron's characterization of the request as
"ask[ing] the Court to issue a broad injunction to force
Defendant's Website to comply with WCAG 2.0," Defendant's Mem.

plaintiffs observe, several courts have awarded similar

injunctive relief.  See, e.g., Gil v. Winn-Dixie Stores, Inc.,

No. 16-cv-23020, 2017 WL 2547242, at *9 (S.D. Fla. June 12,

2017) (ordering "[r]emediation measures in conformity with the

WCAG 2.0 Guidelines" following a bench trial wherein defendant's

representative testified that such modifications were feasible);

Hindel v. Husted, No. 2:15-cv-3061, 2017 WL 432839, at *7 (S.D.

Ohio Feb. 1, 2017) (ordering the Ohio Secretary of State "to

make his website . . . accessible to all individuals, . . .

including conforming with the [WCAG] 2.0 Level A and AA Success

Criteria . . . ."). The cases that Blue Apron cites in support

of its argument address much more anemic and general

injunctions, and do not mandate a different result.  See

Henrietta D. v. Giuliani, 246 F. 3d 176, 178-79 (2d Cir. 2001)

(examining whether the court had appellate jurisdiction where

the district court "declined to order the defendants to do

anything, leaving the terms of the injunction for a later

determination by a magistrate judge"); Payne v. Travenol Labs.,

Inc., 565 F. 2d 895, 898-99 (5th Cir. 1978) (finding too general

an injunction that prohibited defendants from "discriminating");

Burton v. City of Belle Glade, 178 F.3d 1175, 1200-01 (11th Cir.

---

(doc. no. 21-1) at 24, is not quite an accurate characterization
the plaintiffs' request.

1999) (finding unenforceable an injunction ordering the City "not to discriminate in future annexation decisions"); Louis W. Epstein Family P'ship v. Kmart Corp., 13 F. 3d 762, 771 (3d Cir. 1994) (finding that "the district court's injunction against 'otherwise' violating any term of the easement does not give Kmart fair notice as to all the conduct that is enjoined").

### E. Plaintiffs' standing

In its final volley, Blue Apron takes aim at the standing of the plaintiffs, who are blind, to seek an injunction requiring compliance with the full range of the WCAG 2.0 accessibility guidelines, which outline accessibility for "a wide range of disabilities, including visual, auditory, physical, speech, cognitive, language, learning, and neurological disabilities."[27]

As the plaintiffs have established, the individual plaintiffs have standing to seek an injunction requiring Blue Apron to render its website accessible to them.[28]  Access Now has associational standing to seek the same on behalf of its members.[29]  Blue Apron does not dispute this.  Rather, it seeks

---

[27] Defendant's Mem. (doc. no. 21-1) at 24-25 (quoting Web Content Accessibility Guidelines (WCAG) 2.0, available at http://www.w3.org/TR/WCAG20/https://www.w3.org/TR/WCAG20/).

[28] See Plaintiffs' Opp. (doc. no. 34) at 21-23.

[29] Id. at 24-25.

dismissal of the <u>entire</u> action on the basis that the plaintiffs cannot seek to require Blue Apron to render its website accessible to people with <u>other</u> varieties of disability.[30]

As Blue Apron does not dispute the individual plaintiffs' standing to seek at least a remedy that accommodates their own disabilities and Access Now's associational standing to seek the same for its visually-impaired members, the court declines to dismiss the entire action on this basis. It will, if necessary, take up the question of the appropriate scope of the plaintiffs' proposed injunction and whether it imposes an undue burden on Blue Apron, or seeks relief to which the plaintiffs are not entitled, at the appropriate juncture.

## IV. <u>Conclusion</u>

For the reasons discussed herein, the court DENIES the defendant's motion to dismiss the complaint.[31]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: November 8, 2017

---

[30] Defendant's Reply (doc. no. 37) at 10.

[31] Document no. 21.

cc: Edwin J. Kilpela, Esq.
Kevin W. Tucker, Esq.
Earl S. Carrel, Esq.
Jason R.L. Major, Esq.
Wilbur A. Glahn, III, Esq.
Benjamin B. Folsom, Esq.
Bradley J. Leimkkuhler, Esq.
Gregory F. Hurley, Esq.
Michael J. Chilleen, Esq.